UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE ST. CYRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 627 DDN |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Diane St. Cyre for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq*; § 1601, *et seq*. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff Diane St. Cyre, who was born on June 1, 1969, filed her DIB and SSI applications on November 14, 2014.[2] (Tr. 2616, 2633-35). She alleged a disability onset date of February 1, 2014, due to aortic dissection, arthritis and knee pain, lymphedema, depression, congestive heart failure, two bulging discs, chronic obstructive pulmonary

---

[1] Andrew M. Saul is now the Commissioner of Social Security. He is therefore substituted as the defendant in this case in his official capacity. Fed. R. Civ. P. 25(d). No further action needs to be taken to continue this suit. 42 U.S.C. § 405(g) (last sentence).

[2] With a date last insured of December 31, 2018, for her DIB claim. (Tr. 2616).

disease, high blood pressure, gallstones, and difficulty sitting and walking. (Tr. 2616-17). Her application was denied by a disability examiner on April 1, 2015, (Tr. 2629-31), but plaintiff appealed the decision and requested a hearing by an administrative law judge. (Tr. 2646).

On January 18, 2017, plaintiff appeared before an ALJ. (Tr. 2560-2600). A vocational expert also testified at the hearing. (*Id.*). On April 28, 2017, the ALJ denied plaintiff's applications. (Tr. 2541-54). On February 20, 2018, the Appeals Council denied plaintiff's request for review (Tr. 1-7), and the ALJ's decision became the final decision of the Commissioner now before this Court for review. 20 C.F.R. § 404.984(b)(2).

## II. MEDICAL HISTORY

The Court adopts the parties' several statements of uncontroverted material facts (Docs. 21, 26). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The Court discusses specific facts as they are relevant to the parties' arguments.

## III. DECISION OF THE ALJ

At Step One, the ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity during the period from her alleged disability onset date of February 1, 2014, through her date she was last insured on December 31, 2018. (Tr. 2543). At Step Two, the ALJ found that plaintiff had the severe impairments of left knee osteoarthritis, chondromalacia of the patella, patellar misalignment syndrome, chronic obstructive pulmonary disease, chronic aortic dissection, obesity, and major depression. (Tr. 2543-44). At Step Three, the ALJ found that plaintiff had no impairments or combination of impairments that met or were the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 2544-46); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ then found that plaintiff:

has the residual functional capacity [("RFC")] to lift up to 10 pounds occasionally and lift/carry up to 10 pounds frequently. She can stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She can never climb ramps, stairs, ladders, ropes or scaffolds. She can occasionally balance with a hand held assistive device as in a cane. She can occasionally stoop and crouch, but never kneel and crawl. She should avoid exposure to extreme cold and extreme heat. She should avoid exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas. She should avoid exposure to chemicals. She should avoid unprotected heights and exposure to hazardous machinery. Her work is limited to simple, routine and repetitive tasks. She should have only occasional interaction in person with the public, co-workers and supervisors.

(Tr. 2546).

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work as a cafeteria worker, food service worker, or cook helper. (Tr. 2552). At Step Five, the ALJ found that plaintiff was capable of performing jobs existing in significant numbers in the national economy, such as document preparer, addresser, and order clerk. (Tr. 2552-53).

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not be reversed merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing the five-step process); *Pates-Fires*, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC *See* to perform her past relevant work (PRW). *Id*. § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id*.; 20 C.F.R. § 404.1520(a)(4(v).

## V. **DISCUSSION**

Plaintiff argues that the ALJ (1) failed to explain what weight, if any, he afforded the opinions of three non-treating medical sources; (2) improperly discounted the opinions of plaintiff's treating physician; and (3) failed to conduct a proper pain evaluation.

### A. Expert Opinions

Plaintiff argues that while the ALJ briefly discusses or references the opinions of Vivian Knipp, Ph.D.; Kimberly Buffkins, Psy.D.; and Sherry Bassi, Ph.D, he failed to explain what, if any, weight he afforded these opinions. Plaintiff claims that the ALJ only discusses the negative findings, rather than the findings that would support plaintiff's claim for disability. Plaintiff further claims that the ALJ improperly discounted two of three opinions submitted by plaintiff's treating physician, Emily Doucette, M.D. The Court disagrees.

The regulations require an ALJ to explain the weight given to medical opinions from treating, non-treating, and non-examining sources. 20 C.F.R. §§ 404.1527, 416.927. More weight must generally be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527, 416.927. The medical opinions should be considered together with the rest of the relevant evidence in determining disability. *Id.* When evaluating medical opinion evidence, the ALJ should consider factors including how long the source has known plaintiff, how frequently the source has seen plaintiff, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has a specialty related to plaintiff's impairments. 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 6-03p. It is ultimately up to the ALJ to weigh the opinion. *See Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). "An ALJ may discount or disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005).

#### 1. Opinions of Non-Treating Medical Sources

Plaintiff argues that the ALJ erred by failing to assign weight to the opinions of consultative examiners Vivian Knipp, Ph.D. and Kimberly Buffkins, Psy.D., and non-examining psychologist Sherry Bassi, Ph.D. Failing to state the weight given to a

medical opinion, alone, is not error. An ALJ is not required to state the amount of weight given, but need only clarify the reasons the opinion was discounted. *Cf. Grabel v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1527; 416.927 (listing factors to be weighed).

Dr. Knipp, a licensed psychologist, was a consulting examiner who reviewed plaintiff's medical records and met with her a single time for 30 minutes. (Tr. 3252-55). Dr. Knipp opined that plaintiff "would likely have significant difficulty getting along with others due to her irritability and low frustration tolerance," and that "her difficulty in concentration will make it difficult to complete work tasks at this time." (Tr. 3255). With regard to Dr. Knipp's opinion, the ALJ stated:

> The claimant had a psychological evaluation on March 21, 2015 with psychologist Vivian Knipp, Ph.D. The claimant reported depression since 2011; however, Dr. Knipp noted few observations regarding traditionally limiting mental health symptoms. She noted the claimant was adequately groomed and attired, alert, open, spontaneous, cooperative, and had normal speech rate and rhythm. Dr. Knipp observed that the claimant was sad and anxious during the interview, reported poor physical mobility and difficulty with concentration. She added that the claimant had intact verbal judgment, performed simple calculations without difficulty, and had good insight into her psychological problems. (Exhibit 10F). Dr. Knipp diagnosed the claimant with major depression that was recurrent and moderate along with anxious distress.

(Tr. 2551). Elsewhere in his decision, the ALJ noted that Dr. Knipp stated plaintiff was cooperative, but anxious, and that she reported that "she lives alone, prepares simple meals, can take care of her hygiene as pain allows, and can take medicine by herself." (Tr. 2545-46; 3255).

Courts have found harmless error where an ALJ failed to afford weight to a treating physician, when an analysis of weight would not have affected the outcome, or when the ALJ "engaged in a detailed discussion of their findings, and his decision [did] not conflict with them." *Williams v. Colvin*, 98 F. Supp. 3d 614, 632 (W.D.N.Y. 2015) (citations omitted). Under the treating physician weighting framework, where treating physician opinions are entitled to greater weight than examining opinions, the same rule

of harmless error must also apply to examining opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Here, the ALJ discussed several details of Dr. Knipp's opinion at both Steps 3 and 4 of his analysis.  Moreover, Dr. Knipp's opinions that plaintiff "would likely have significant difficulty getting along with others," and that "her difficulty in concentration will make it difficult to complete work tasks" are consistent with the ALJ's RFC determination that plaintiff's work be limited to simple, routine and repetitive tasks and that she should have only occasional interaction in person with the public, co-workers and supervisors.  A specific assignment of weight to Dr. Knipp's opinion would not have impacted the outcome of the ALJ's decision, and the failure to assign the opinion a specific weight was harmless.

Second, with regard to Dr. Buffkins' opinion, the ALJ stated that plaintiff "had a psychological evaluation on July 26, 2014 with licensed psychologist Kimberly Buffkins, Psy. D.  Plaintiff stated then that she was no[t] receiving mental health therapy or counseling, though she had depression for the past three months.  This history of little treatment is inconsistent with the claimant's allegations of substantially limiting mental health impairments."  (Tr. 2551). The ALJ further noted that Dr. Buffkins stated plaintiff could get along with family and people in general and that "Dr. Buffkins observed that the claimant reported preparing her own meals, driving at times, doing household chores, and grocery shopping."  (Tr. 2545-46; 2995-98).  Again, although the ALJ failed to state the specific weight afforded to Dr. Buffkins' opinion, he clearly discussed the opinion and the inconsistency between plaintiff's treatment and the symptoms she reported to Dr. Buffkins.  Dr. Buffkins' prognosis for plaintiff was fair, and she found plaintiff "is generally functioning pretty well."  (Tr. 2998).  The opinion ultimately supports the ALJ's decision, and the ALJ's failure to articulate the precise weight given to Dr. Buffkins' opinion was harmless.

Finally, with regard to non-examining psychologist Dr. Bassi's opinion, the ALJ stated: "Sherry Bassi, Ph.D. provided an opinion on April 1, 2015.  She stated the claimant faced no more than moderate limitations in each of the B criteria areas, though the analysis has changed since she offered this opinion.  Regardless, the undersigned

gives this opinion some weight but new records are now in the file that were not present as of the date of the opinion." (Tr. 2546, 2601-14). The ALJ does not state what the new records are. However, Dr. Bassi opined that plaintiff was capable of performing simple work-related activity with limited social interaction. (Tr. 2608). As discussed above, these are the limitations reflected in the ALJ's determination of plaintiff's RFC. The ALJ accounted for Dr. Bassi's limitations and any deficiency in the writing of his opinion would not otherwise change the outcome of his decision. While remand for further development might be warranted if Dr. Bassi were a treating physician, Dr. Bassi did not treat plaintiff, nor did she ever examine plaintiff a single time. *See* 20 C.F.R. § 404.1527(d)(2) (stating the requirement to give "good reasons" for the weight given to treating source opinions).

Plaintiff may dispute the lack of weight the ALJ assigned to these opinions, but remand for further development is not necessary, because the ALJ's RFC is consistent with the opinions and with the evidence of record.

### 2. Opinions of Treating Physician, Emily Doucette, M.D.

Emily Doucette, M.D. has been plaintiff's primary care physician and has seen plaintiff regularly since the Fall of 2014. (Tr. 3258). Opinions from medical sources who have treated a claimant typically receive more weight than opinions from one-time examiners or non-examining sources. See 20 C.F.R. §§ 404.1527; 416.927. However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. *See Prosch v. Astrue*, 201 F.3d 1010, 1012-13 (8th Cir. 2012); *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007). When a treating physician's opinion is not entitled to controlling weight, the ALJ must consider several factors when assessing the weight to give it. *Owens v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008). These include the length of the treatment relationship and the frequency of examination, the nature and extent of treatment relationship, supportability with relevant medical evidence, consistency between the opinion and the record as a whole, the physician's status as a specialist, and any other relevant factors brought to the

attention of the ALJ. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

The ALJ considered three opinions submitted by Dr. Doucette, plaintiff's treating physician. (Tr. 2549-50). Dr. Doucette first submitted a letter on January 27, 2016, stating that plaintiff was not physically able to maintain regular employment because of her physical impairments and required a cane for ambulation. (Tr. 2549, 3258). Dr. Doucette then submitted a second opinion, on April 13, 2016, in the form of a physical RFC questionnaire, in which she opined that plaintiff was incapable of even low-stress jobs; must take daily unscheduled breaks for 30 minutes; and can only sit 30 minutes at a time for a total of 2 hours in an 8-hour workday, stand or walk 10 minutes at a time for a total of less than 2 hours in an 8-hour workday, and lift and carry less than 10 pounds. (Tr. 2549, 3262-63). Finally, Dr. Doucette submitted a mental RFC questionnaire, on December 14, 2016, opining that plaintiff is unable to meet competitive standards for remembering work-like procedures, maintaining attention for two-hour segments, sustaining an ordinary routine without special supervision, completing a normal workday or week without interruptions, dealing with normal work stress, or performing at a consistent pace. (Tr. 2550, 4031-36).

The ALJ considered each of Dr. Doucette's opinions, but assigned them little weight because they conflicted with the treatment notes in the record up to that point. (Tr. 2549-50). He assigned the mental RFC questionnaire some weight, but found the extreme limitations inconsistent with the medical evidence.

In 2015 and 2016, plaintiff's treatment notes showed she only had mild osteoarthritis in her knees and spine and no evidence of bony metastasis. (Tr. 2548, 2947). They showed normal range of motion in plaintiff's lower extremities and no evidence of deep vein thrombosis. (Tr. 2548-49, 2953, 2969-70, 3189, 3271, 3334, 3575). In the month before Dr. Doucette submitted the physical RFC questionnaire, her treatment of plaintiff revealed no lower extremity edema and reports of only moderate knee pain, along with clear lungs, lack of chest pain, and a normal echocardiogram. (Tr.

2549, 3104, 3273). The ALJ noted that the first opinion seemed like a reflection of plaintiff's own allegations "rather than the byproduct of a culmination of compounding and worsening treatment results of her medical impairments." (Tr. 2549). Accordingly, the ALJ properly discounted the first two opinions, because the treatment notes failed to indicate any impairments that could cause the extreme physical limitations Dr. Doucette imposed in her opinions.

In terms of the mental RFC questionnaire, plaintiff's depression had significantly improved with treatment. (Tr. 2551-52, 3862). Her treatment notes document a cooperative attitude and normal behavior, affect, judgment, insight and remote memory. They also show that plaintiff was functioning at a higher level than Dr. Doucette suggested. (Tr. 2551, 3254-55, 3271, 3362, 3616). Accordingly, the ALJ could discount the most extreme limitations as unsupported by plaintiff's treatment notes.

The ALJ discounted Dr. Doucette's opinions, because they were at odds with the objective medical evidence, but he still gave them some weight,. The ALJ credited several of Dr. Doucette's physical limitations, but omitted the mental limitations he did not find to be supported in the record. The RFC is supported by substantial evidence and the ALJ did not err in discounting Dr. Doucette's opinions.

### B. Pain Evaluation

Finally, plaintiff argues that the ALJ failed to make an express credibility determination detailing reasons for discrediting her testimony, must set forth any inconsistencies, and must discuss the factors defined in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court disagrees. A recent Social Security Ruling rejects the use of the term "credibility," because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p. Instead, the ALJ should consider all evidence in the record and incorporate the factors to be considered under regulations 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). These factors include a plaintiff's daily activities; the location, duration, frequency, and intensity of the pain; the medication used

to alleviate the pain; any other treatment for the pain; and any other measures taken by the plaintiff to relieve the pain. *Id.*

Plaintiff testified she suffers from lower back and buttocks pain that is sometimes shooting and sometimes crampy. She testified she has leg pain that significantly limits how far she can walk or how long she can stand, claiming she can stand for less than an hour with a cane, walk for about 10 minutes before needing a break, and can sit for 1-2 hours total before her ankles swell and she needs to elevate them. She further testified she has knee pain that makes it hard for her to shower and do household tasks like mopping and dishes. (Tr. 2585).

In evaluating plaintiff's subjective complaints of pain, the ALJ stated that he "considered pain as an additional, non-exertional limitation pursuant to 20 C.F.R. §§ 404.1529 and 416.929 (incorporating and expanding upon *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984))." While the ALJ did not specifically discuss each *Polaski* factor, an ALJ need not specifically discuss them; rather, he or she must only consider them. It is apparent from the ALJ's decision that he considered them, and he articulated several instances of conflicts in the record regarding plaintiff's allegations of widespread pain. With regard to plaintiff's leg and knee pain, the ALJ noted that plaintiff's knees were found to be stable with full range of motion (Tr. 2547) and that plaintiff had no deep vein thrombosis, venous reflux, or bony metastasis. (Tr. 2548). Plaintiff reported no pain on multiple occasions. (Tr. 2548-49; 3090, 3293, 3334-35). In determining plaintiff's RFC, the ALJ properly considered plaintiff's subjective allegations of disabling symptoms and pain, but found that her statements concerning their intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Tr. 2547-52). *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. The ALJ's treatment of plaintiff's subjective complaints is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

                                                                /s/   David D. Noce_____
                                                          **UNITED STATES MAGISTRATE JUDGE**

Signed on June 28, 2019.